FILED

2021 Mar-31  PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| NELL M. GLADNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00049-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| AMDNISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Nell Gladney, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). Gladney timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.      FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Gladney was fifty years old at the time of her alleged disability onset and fifty-two years old at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ"). (Tr. at 17, 24, 34). Gladney speaks English, has a high school

---

[1] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

education, and completed two years of college. (Tr. at 69). Her past employment includes working as a grocery store cashier at Winn-Dixie and Walmart. (Tr. at 40-41). Gladney filed the instant application on October 19, 2016, alleging a disability onset date of June 20, 2014. (Tr. at 15). However, at her hearing before the ALJ, she amended the alleged onset date of disability to March 16, 2016. (*Id*). Gladney alleged disability due to a pinched nerve in her neck; bulging, degenerative, and herniated discs in her neck; arthritis; excruciating lower back pain; and pain in her neck, arms, and legs. (Tr. at 64-65). Gladney testified she could no longer work due to pain and the pinched nerve in her neck. (Tr. at 37).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir.

1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Gladney met the date last insured ("DLI") requirement of the Social Security Act on March 31,

2019. (Tr. at 64). The ALJ then determined Gladney had not engaged in SGA from her amended alleged onset date of March 16, 2016 through her DLI. (*Id*).

The ALJ determined Gladney has the following severe impairments: obesity, osteoarthritis, cervical degenerative disc disease ("DDD"), and degenerative joint disease ("DJD") in her knees, hips, and left shoulder. (Tr. at 17). 20 C.F.R. §§ 404.1520(c), 416.920 (c). However, the ALJ found Gladney did not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ( 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. at 18). The ALJ found the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to equal the criteria of any listed impairment, and no acceptable medical source concluded Gladney's impairments medically equal a listed impairment. (Tr. at 19). Gladney's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 20). The ALJ determined Gladney has the following RFC:

> To perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except cannot climb ladders, ropes, or scaffolds; limited to frequent stooping, kneeling, crouching, and crawling; limited to frequent reaching and handling bilaterally; and cannot be exposed to workplace hazards such as moving mechanical parts and high, exposed places.

(Tr. at 19).

The ALJ found Gladney remained capable of performing her past work as a cashier through her DLI. (Tr. at 22). She was considered an "individual closely approaching advanced age," being fifty years old on the alleged onset date. (Tr. at 23). Although the ALJ found Gladney was capable of performing her past work, he also determined Gladney could perform other work as well. (*Id*). At the hearing before the ALJ, the vocational expert ("VE") testified that considering Gladney's age, education, work experience, and RFC there are jobs that exist in significant numbers in the national economy she can perform such as garment sorter, laundry sorter, and marker. 20 C.F.R. §§ 404.1569, 404.1569(a). (*Id*). The ALJ concluded by finding Gladney has not been under a disability, as defined in the Social Security Act, from March 16, 2016, the amended alleged onset date, through the date of his decision, December 31, 2018. (Tr. at 24). The Appeals Council denied Gladney's request for review, and she timely filed this appeal. (Tr. at 1-6; Doc. 14).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec*., 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference

to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir.

1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   DISCUSSION

On appeal, Gladney contends the ALJ's decision should be reversed and remanded for reasons that fall into two categories: (1) the ALJ failed to provide a reasoned evaluation of all the evidence when rendering the RFC assessment; and (2) the ALJ erred in discounting her subjective complaints of disabling pain.

### A.   Gladney's RFC

A claimant bears the burden of proving she was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ considered Gladney's disability claim using the five-step sequential evaluation process as discussed *supra*.  To determine if she could perform her past relevant work at step four or other work at step five, the ALJ assessed Gladney's RFC.   An individual's RFC represents the most she can still do, despite her limitations, in a work setting.  20 C.F.R. § 404.1545(a)(1).  In order to determine an individual's RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations. *Id*. § 404.1545(a)(3).  Moreover, the evaluator considers not only the impairments

classified as "severe" but the "limiting effects" of all conditions when making a judgment about an individual's RFC.  *Id*. § 404.1545(e).  A reviewing court will affirm the ALJ's RFC assessment if it is supported by the objective medical evidence.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Gladney argues the ALJ's RFC assessment failed to evaluate all of the objective medical findings and opinion evidence.  Specifically, she contends the ALJ: (1) incorrectly gave partial weight to the reports from two consultative physical examinations performed by Dr. Danielle Powell and Dr. Abiodun Philip Badewa; (2) incorrectly gave full weight to the opinion of the non-examining state agency physician, Dr. Marcus Whitman; (3) failed to explain his RFC findings pursuant to Social Security Ruling ("SSR") 96-8p; and (4) failed to adequately consider her obesity.

The ALJ must articulate the weight given to each of the medical opinions in the record and his supporting reasons.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source shared with the claimant, the relevance of the evidence the medical source gives to support the opinion, the consistency of the opinion with the record as a whole, and the specialization of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The classification of acceptable medical sources encompasses several types of sources that are entitled to varying weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case... includ[ing] State agency medical and psychological consultants . . ."  20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources and non-treating medical sources over non-examining medical sources.  *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).  Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440 (internal quotations omitted)).  However, the opinion of a one-time consultative examiner is not entitled to any special deference. *McSwain v. Bowen*,

814 F.2d 617, 619 (11th Cir. 1987); *see also Denome v. Comm'r Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding the ALJ does not have to defer to the opinion of a doctor who conducted a single examination and who was not the treating source).  In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Also, opinions such as determinations of a claimant's disability, the claimant's RFC, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition."  *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC.  *See, e.g.*, 20 C.F.R. § 404.1546(c).

### 1.    The Physical Consultative Examinations

The record contains opinions from Drs. Powell and Badewa, two physical consultative examiners.   (Tr. at 371-75, 468-79).   Dr. Powell conducted a consultative examination on April 26, 2014, in which she addressed Gladney's physical impairments and how these limitations affected her ability to perform certain job functions.  (Tr. at 371-75).  Gladney's chief complaints were left arm, neck, and back pain.  (Tr. at 371).  She reported to Dr. Powell that her current medications were Aleve and Motrin.  (Tr. at 372).

During the examination, Dr. Powell observed Gladney was able to walk to the exam room without difficulty, sit comfortably, and get on and off the exam table, as well as take off and put on her shoes.  (Tr. at 372).  Dr. Powell found Gladney had a normal gait and stride, did not use or need an assistive device, and was able to toe and heel walk.  (Tr. at 373).  However, during the toe and heel walk, she complained of pain.  (*Id*.).  In her general findings, Dr. Powell noted Gladney did have tenderness of the cervical paraspinal muscles, along with several paravertebral muscle spasms.  (Tr. at 374).  Dr. Powell's examination also revealed lumbar tenderness and lumbar paraspinal muscle spasms.  (*Id*.).  Dr. Powell documented Gladney's bilateral upper and lower extremity strength as 5/5 and noted her muscle bulk and tone were normal.  (*Id*.).  Dr. Powell opined Gladney: (1) suffered from mechanical low back pain, as well as neck pain with cervical radiculopathy; (2) could stand and walk for less than

two hours; (3) had no limitation on the amount of time she could sit; (4) could occasionally lift, carry, push, and pull 10-20 pounds and could frequently lift, carry, push, and pull 5-10 pounds; (5) could occasionally climb steps/stairs, ladders, scaffolds, and ropes, as well as occasionally stoop, crouch, kneel, and crawl; and (6) could occasionally reach overhead and forward but could frequently handle, finger, and feel.  (Tr. at 375).

Substantial evidence supports the ALJ's decision to give partial weight to Dr. Powell's opinion.  Because Dr. Powell only examined Gladney once, her opinion is not entitled to any special deference.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing more weight is generally given to opinions from treating sources); *Crawford*, 363 F.3d at 1160 (holding the ALJ correctly found that because the doctor only examined the claimant once, the doctor's opinion was not entitled to great weight).  The ALJ also gave Dr. Powell's opinion little weight because it occurred nearly two years before Gladney's amended alleged onset date of disability.  (Tr. at 22).  Thus, Dr. Powell's consultative examination was of little relevance.  *See Santos v. Soc. Sec. Admin., Comm'r.*, 731 F. App'x 848, 856 (11th Cir. 2018).

Dr. Badewa examined Gladney on January 5, 2017, and reviewed x-rays completed on February 21, 2017, nearly three years after Dr. Powell's examination.  (Tr. at 468, 476).  Dr. Badewa found Gladney had reduced range of motion in her back, hips, and knees and noted she had a normal gait and full range of motion in

her left shoulder, right ankle, and hands.  (Tr. at 472).  Gladney's x-rays showed moderate sclerotic changes in her right knee, and Dr. Badewa diagnosed her with moderate osteoarthritis of the right knee joint.  (Tr. at 478).  X-rays of Gladney's right hip indicated significant arthritic changes and advanced degenerative osteoarthritis.  (*Id*.).  Dr. Badewa opined Gladney had severe degenerative osteoarthritis of the lumbosacral spine and diagnosed dorsalgia (back pain), cervicalgia (neck pain), and polyarthritis (chronic arthritis of several joints).  (Tr. at 478-79).

Substantial evidence supports the ALJ's decision to give partial weight to Dr. Badewa's opinion regarding Gladney's physical limitations.  Dr. Badewa offered no opinions as to how any impairments he found affected Gladney's ability to work.  (Tr. at 468-79).  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (providing more weight is generally given to opinions with better explanations); *see also Moore*, 405 F.3d at 1213 n.6 (noting the mere existence of impairments does not reveal the extent to which they limit a claimant's ability to work).  The ALJ also noted Dr. Badewa's opinions were "only generally consistent with the objective medical evidence, [Gladney]'s symptoms, and her daily activities."  (Tr. at 22).

For example, Gladney visited Princeton Baptist Medical Center on August 30, 2015, and reported she did not have any back pain.  (Tr. at 450).  During this visit, the mid-level practitioner ("MLP"), Shana Moton, PA, noted Gladney's neck and

back range of motion were normal.  (*Id*.).  On October 17, 2016, Gladney visited her treating physician, Dr. Max Michael, at Cooper Green Mercy Hospital.  (Tr. at 465).  Dr. Michael noted Gladney's pain was controlled with Motrin.  (*Id*.).  Gladney saw Dr. Michael again on June 19, 2018, when she reported occasional right heel pain but was otherwise negative for pain and seemed to respond well to taking Motrin.  (Tr. at 481).  The reports by the MLP and Dr. Michael contradict Dr. Badewa's opinion that Gladney suffered from back and neck pain.

Second, the ALJ gave Dr. Badewa's opinion partial weight because it was not entirely consistent with Gladney's own reports of her daily activities.  Gladney reported she could prepare meals, do light chores around the house, leave the house alone, shop in stores, dress herself most of the time, take showers, and clean her house in moderation.  (Tr. at 35, 37, 225-26).  Dr. Badewa's findings of a restricted range of motion, arthritis, and neck and back pain conflicted with Gladney's own reports of her daily activities.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (providing more weight is afforded to opinions that are consistent with the record as a whole).  Accordingly, the ALJ's decision to give Dr. Badewa's opinion partial weight is supported by substantial evidence.

### 2.     Non-Examining State Agency Medical Consultant Opinion

Dr. Whitman, a state agency medical consultant, reviewed the medical evidence on March 03, 2017.  (Tr. at 69).  Dr. Whitman found Gladney's statements

were partially consistent with the medical evidence.  (Tr. at 71).  Gladney reported she experienced "excruciating lower back pain," although her treating physician, Dr. Michael, only prescribed Motrin to alleviate her lower back and neck pain.  (Tr. at 69, 70, 465, 481).  While Gladney reportedly suffers from disabling pain, she only sees Dr. Michael twice a year.  (Tr. at 36, 51-54).  Due to the inconsistencies of Gladney's statements and the medical evidence, Dr. Whitman opined she could perform a reduced range of light work.  (Tr. at 22, 72-75).

Gladney's brief only mentions Dr. Whitman's opinion once.  (Doc. 14 at 10). She states the ALJ "gave full weight to the opinion of the non-examining state agency physician, who assessed the claimant's RFC as light."  (*Id.*).  However, Gladney does not present any arguments as to why the ALJ erred in giving Dr. Whitman's opinion significant weight.  As such, she has waived that argument.  *See e.g. Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim).

Nonetheless, substantial evidence supports the ALJ's decision to give significant weight to Dr. Whitman's opinion.  State agency medical consultants are highly qualified physicians who are experts in Social Security disability programs. Their opinions may be entitled to great weight if the evidence supports their opinions.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(i); SSR 96-6p, 1996 WL

374180 (S.S.A.).  The ALJ determined Dr. Whitman's opinion was consistent with the objective medical evidence, Gladney's symptoms, and her daily activities.  (Tr. at 22).[2]

### 3.      RFC Finding Pursuant to SSR 96-8p

SSR 96-8p states the Commissioner's policies regarding the assessment of a claimant's RFC and calls for the ALJ to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 12, 1996).  Additionally, the ruling calls for the ALJ to describe how the evidence supports his conclusion and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  *Id.*

Here, as the ALJ discussed, the record evidence as a whole supports an RFC to perform a range of light work with additional limitations including: no climbing ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, crawling, reaching and handling bilaterally; and no exposure to workplace hazards.  (Tr. at 19-22).  Again, the ALJ noted that although Gladney alleged disabling functional

---

[2] In her reply brief, Gladney contends the Commissioner's brief applied the wrong version of the regulations to the opinion evidence in this case.  (Doc. 16 at 3).  Her two-sentence argument states the previous version of the regulations, applicable to claims filed prior to March 27, 2017, should apply.  (*Id.*).  However, Gladney does not explain how the analysis she proposes would yield a different outcome.

limitations arising from her impairments, the treatment records, diagnostic imaging, and her reports of her daily activities do not show such severe limitations.  (Tr. at 20).  The ALJ specifically mentioned Gladney's 2015 visit to Princeton Baptist Medical Center when she reported she did not have any back pain and the MLP found her to have normal range of motion in her neck and back.  (Tr. at 21, 450).  The ALJ also discussed the June 2018 medical visit to Dr. Michael where Gladney reported she occasionally had pain in her right heel but was otherwise negative for pain.  (Tr. at 21, 481).  The ALJ noted Gladney only sees her treating physician, Dr. Michael, twice a year even though she reportedly suffers from disabling pain.  (Tr. at 21. 51-54).[3]   The ALJ complied with SSR 96-8p by providing a narrative discussion that cited specific evidence and described how the evidence supported the conclusion.  *See Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009) (holding the ALJ complied with SSR 96-8p by discussing the relevant evidence and making a finding of the plaintiff's exertional limitations).

---

[3]  In her reply brief, Gladney argues for the first time that the infrequency of her visits with Dr. Michael was due to her lack of insurance.  (Doc. 16 at 7).  The court declines to consider this new argument, to which the Commissioner did not have an opportunity to respond.  *See, e.g., Newsome ex rel. Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1203 (M.D. Ala. 2006); *McCulley v. Allstates Tech. Servs.,* 2005 WL 1475314, *6, n.15 (S.D. Ala. 2005) (issues raised in a reply brief are not properly before the court where they could and should have been presented previously and the movant has offered no explanation for the delay.); *Lewis v. Mercedes–Benz USA, LLC,* 2004 WL 3756384, *2 (N.D. Ga. 2004); *Reliance Ins. Co. of Ill., Inc. v. Richfield Hospitality Servs., Inc.,* 92 F. Supp. 2d 1329, *1332 (N.D. Ga. 2000).  Moreover, the record includes evidence that Gladney's conservative pain treatment was effective.

### 4.    The ALJ's Consideration of Gladney's Obesity

Substantial evidence supports the ALJ's RFC findings because he adequately considered Gladney's obesity.  The Eleventh Circuit has made clear that statements and findings by an ALJ can show that a plaintiff's impairments have been considered in combination.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (the ALJ specifically stated that "the medical evidence establishes that [Wilson] had [several injuries] which constitute a severe impairment, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."); *see Jones v. Dept. of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Obesity can combine with other impairments to make an individual disabled even if the other impairments are not severe enough on their own to do so.  *See* SSR 02-1p.  Obesity can exacerbate both mental and physical conditions.  (*Id.*).  "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *see also Doughty*, 245 F.3d at 1278 (11th Cir. 2001); 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  Moreover, it is the plaintiff's burden to provide a medical record that is

complete, and if she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e); 404.1516.

The ALJ found Gladney's obesity was a severe impairment. (Tr. at 17). However, it was not severe enough to meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.626). (Tr. at 18). The ALJ discussed Gladney's obesity and considered it in terms of its possible effects on her ability to work and her ability to perform activities of daily living. (Tr. at 19). The ALJ accounted for Gladney's obesity by limiting her to a reduced range of light work. (*Id.*). *See Borges v. Comm'r Soc. Sec.*, 771 F. App'x 878 (11th Cir. 2019) (holding the ALJ properly accounted for claimant's obesity by limiting her to "light work"). Furthermore, the ALJ reduced the range of "light work" by incorporating limitations as to climbing, stooping, kneeling, crouching, crawling, and reaching into his findings of Gladney's RFC. (Tr. at 19). The ALJ explained her obesity did not:

> prevent ambulation, reaching, and orthopedic and postural maneuvers, or…prevent her from working or being able to complete a fairly full range of activities of daily living. It does, however, in combination with claimant's other impairments potentially affect her exertional limitations. A reduction to light work with further appropriate work restrictions is therefore warranted, and these limitations are accounted for in the [RFC] as determined herein.

(Tr. at 21-22). Thus, the ALJ accounted for Gladney's obesity in limiting her RFC to a reduced range of light work.

Furthermore, Gladney has made no showing her obesity would prohibit her from performing the exertional demands of light work. Gladney did not allege obesity in her disability report nor has she alleged limitations due to her obesity. (Tr. at 19, 194). Additionally, no treating or examining physician placed any restrictions on Gladney due to her obesity. (Tr. at 19). The plaintiff has the burden of showing how an impairment prevents her from engaging in SGA. *See Moore*, 405 F.3d at 1213 n.6 (11th Cir. 2005). The severity of an impairment must be measured in terms of how it limits a claimant's ability to work. *See McCruter v. Bowen*, 791 F.3d 1544, 1547 (11th Cir. 1986). Here, Gladney did not properly demonstrate how the obesity affected her ability to work.

The ALJ's determination of Gladney's RFC is supported by substantial evidence.

### B.   Credibility Determination

A claimant's subjective complaints alone are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). A claimant has the burden of providing sufficient evidence to support her allegations of disabling pain or other symptoms. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a)-(c), 404.1529(a), 416.912(a)-(c), 416.929(a). When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either

objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26.  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), (d); 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26.  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Gladney testified on November 13, 2018, that she could not work because she had "been in a lot of pain."  (Tr. at 36).  She also testified she could only walk for one or two blocks, stand for fifteen minutes without needing to lean on something, and sit for fifteen to twenty minutes before needing to change positions.  (Tr. at 20, 39, 43-47).  Gladney also testified her granddaughter had to help her put her shoes on because she could barely bend.  (Tr. at 37).

Substantial evidence supports the ALJ's determination that Gladney's statements regarding the intensity, persistence, and functionally limiting effects of her alleged pain were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. at 20).  The ALJ noted that despite Gladney's claims of disabling and severe pain, Dr. Michael did not recommend or prescribe any medications besides Motrin.  (Tr. 21, 465, 481).[4]  *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (indicating a claimant's lack of use of potent pain medication can undermine allegations of constant, severe pain); s*ee also* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).  Additionally, the ALJ emphasized that despite Gladney's allegations of disabling pain, she only visited Dr. Michael twice a year.[5]  *See* 20 C.F.R. §§ 404.1529(c)(3)(v), (vi), 416.929(c)(3)(v), (vi) (noting that a claimant's treatment and measures used to relieve pain can be considered); *see also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting a history of conservative treatment can be a factor in evaluating a claimant's testimony).  Dr. Michael's treatment notes also contradict Gladney's allegations of pain.  At her most

---

[4] In her reply brief, Gladney argues for the first time that she previously tried a stronger pain medication—Norco—but that she had a severe allergic reaction.  (Doc. 16 at 7).  The court declines to consider this new argument, to which the Commissioner did not have an opportunity to respond. *See, e.g., Bell*, 444 F. Supp. 2d at 1203; *McCulley,* 2005 WL 1475314, *6,  n. 15; *Lewis,* 2004 WL 3756384, *2; *Richfield Hospitality Servs.,* 92 F. Supp. 2d at 1332.  Moreover, the record includes evidence that Gladney's conservative pain treatment with Motrin was effective.  Further, the record does not indicate that other, more aggressive pain treatment was recommended.

[5] *See* note 3, *supra*.

recent visit with Dr. Michael on June 19, 2018, he indicated that, other than some pain in her right heel, a review of her symptoms was negative.  (Tr. at 21, 481).

In sum, the ALJ articulated in detail his findings that Gladney's subjective complaints were inconsistent with the medical evidence of record, and substantial evidence supports the ALJ's determination that Gladney's pain was not as severe as she claimed.

## IV.    CONCLUSION

Upon review of the administrative record and considering all of Gladney's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law.   Accordingly, the Commissioner's decision is due to be affirmed.  A separate order will be entered.

**DONE** this 31st day of March, 2021.

STACI  G.  CORNELIUS
U.S. MAGISTRATE JUDGE